UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAMELA ROONEY, ET AL. | CIVIL ACTION |
| VERSUS | NO. 22-1164 |
| THE PROCTER AND GAMBLE COMPANY | SECTION "R" (1) |

## ORDER AND REASONS

Before the Court is defendant Procter & Gamble Company's motion to dismiss the third amended complaint filed by plaintiffs Pamela and Pat Rooney.[1] Plaintiffs oppose defendant's motion.[2] For the following reasons, the Court GRANTS defendant's motion.

## I.    BACKGROUND

This case arises from plaintiff Pamela Rooney's alleged exposure to benzene from her use of Secret aerosol antiperspirant, a product that defendant manufactures, advertises, and sells. Plaintiffs contend that Rooney's use of Secret antiperspirant caused her to develop cancer. On April 28, 2022, plaintiffs filed a complaint against defendant for failure to issue an

---

1       R. Doc. 33.
2       R. Doc. 34.

adequate warning under the Louisiana Products Liability Act (the "LPLA").[3] Plaintiffs then amended their complaint twice in response to defendant's motions to dismiss.[4]

In their second amended complaint, plaintiffs contended that in 2021, Valisure LLC, an analytical pharmacy, ran tests on a number of defendant's antiperspirant products, including Secret.[5] Valisure's testing allegedly revealed that samples of Secret antiperspirants contained benzene, a carcinogenic chemical which plaintiffs contended is capable of causing, among other things, triple negative breast cancer, the specific type of cancer Rooney was diagnosed with.[6] The batches of Secret that Valisure tested allegedly included values of benzene ranging from 1.10 to 16.2 parts per million ("ppm").[7] For reference, plaintiffs alleged that the National Institute of Occupational Safety and Health recommends that workers expecting to be exposed to benzene at concentrations of 0.1 ppm wear protective gear, and identifies skin absorption as a method of benzene exposure.[8] Plaintiffs asserted that both the Centers for Disease Control and the U.S. Department

---

[3]     R. Doc. 1.
[4]     R. Docs. 15 & 25.
[5]     R. Doc. 25 ¶ 16.
[6]     *Id.* ¶ 12.
[7]     *Id.* ¶ 16.
[8]     *Id.*

2

of Health and Human Services recognize the carcinogenic properties of benzene.[9] They further alleged that the FDA characterizes benzene as a "Class 1" compound, which, according to FDA guidance, "should not be employed in the manufacture of drug substances, excipients, and drug products, because of their unacceptable toxicity or their deleterious environmental effect."[10]

Plaintiffs alleged that Valisure filed a citizen petition with the FDA asking the agency to recall all batches of defendant's antiperspirant products that contained over 0.1 ppm of benzene.[11] Although the FDA has not responded to Valisure's petition, defendant voluntarily recalled batches of its antiperspirant products from the market after Valisure filed the petition.[12]

Plaintiffs asserted that the FDA maintains a list of acceptable active ingredients for use in antiperspirant products. Benzene is not on the FDA's list of acceptable active or inactive ingredients, nor does defendant include benzene on the list of ingredients on its antiperspirants.[13] In fact, defendant allegedly represents to consumers that benzene is among the materials it

---

[9]   *Id.* ¶¶ 37-38.
[10]  *Id.* ¶ 41.
[11]  *Id.* ¶ 17.
[12]  *Id.*
[13]  *Id.* ¶ 20.

3

does *not* use in any of its products.[14] Plaintiffs thus alleged that the antiperspirant is both "misbranded" and "adulterated" in violation of the Federal Food, Drug, and Cosmetics Act (the "FDCA"). Plaintiffs asserted that defendant violated the Louisiana Products Liability Act (the "LPLA") by selling Secret antiperspirants without issuing adequate warnings.[15] Plaintiffs also contended that defendant was liable under theories of negligence, gross negligence, strict liability, and "fault,"[16] and that defendant violated the FDCA.[17]

The Court dismissed plaintiff's second amended complaint on November 21, 2022.[18] The Court based its ruling on two key issues with plaintiffs' LPLA claim: First, plaintiffs failed to plausibly allege that Rooney actually used any antiperspirant products that contained benzene.[19] Second, despite plaintiffs' allegation that "[t]he development of triple negative breast cancer as a result of benzene exposure has been well documented," plaintiffs

---

[14]   *Id.* ¶ 20.
[15]   *Id.* at 15.
[16]   *Id.* ¶ 14.
[17]   *Id.* ¶¶ 42-47.
[18]   R. Doc. 31.
[19]   Plaintiffs contended in their opposition to defendants' motion to dismiss that they had matched the lot numbers on their antiperspirant cans with the lot numbers that Valisure confirmed contained Benzene, but because that fact was not alleged in their second amended complaint, the Court could not consider it in ruling on defendant's motion to dismiss. R. Doc. 31 at 10.

failed to allege any facts supporting this allegation. The Court thus held that plaintiffs' allegation that benzene can cause triple negative breast cancer was an unsupported, conclusory assertion of fact.[20] The Court further held that to the extent plaintiffs brought any other claims against defendant, such claims were dismissed, as the LPLA "provides the exclusive remedy for products liability suits under Louisiana law."[21] The Court further held that to the extent plaintiffs brought a claim under the FDCA, that, too, was dismissed, as the FDCA does not confer a private right of action to plaintiffs.[22]

On December 4, 2022, plaintiffs filed a third amended complaint. In the latest version of their complaint, plaintiffs no longer specify that Rooney has triple negative breast cancer. Rather, they state her diagnosis in more general terms: They contend that she has "breast cancer" and "other forms of cancer spreading throughout various parts of her body."[23] They assert that she first noticed "little lumps in her breasts" in August 2021, and that she was "notified of cancer in her lymph nodes" in October 2022.[24] Plaintiffs also

---

[20] *Id.* at 11.
[21] *Id.* at 12 (quoting *Flagg v. Stryker Corp.*, 647 F. App'x 314, 316 (5th Cir. 2016)).
[22] *Id.*
[23] R. Doc. 32 ¶ 11.
[24] *Id.* ¶ 7.

alleged that they have in their possession a can of adulterated Secret antiperspirant, which they identify by number.[25]

Defendant moved to dismiss plaintiffs' third complaint on the grounds that plaintiffs' new allegations do not adequately address the causation issues the Court identified in its November 21, 2022 Order and Reasons. Defendant contends it is also entitled to dismissal on the grounds that plaintiffs failed to plausibly allege that it breached its duty to warn. Plaintiffs oppose defendant's motion.

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d

---

[25]   *Id.* ¶ 8(a).

228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III. DISCUSSION

To maintain a products liability action under the LPLA, a plaintiff must establish that "the defendant is the manufacturer of the product; the claimant's damage was proximately caused by a characteristic of the product; this characteristic made the product unreasonably dangerous; and the claimant's damage arose from a reasonably anticipated use of the product." *Flagg v. Stryker Corp.*, 647 F. App'x 314, 316 (5th. Cir. 2016) (citing La. Rev.

7

Stat. § 9:2800.52). A plaintiff can show that a product was unreasonably dangerous "under one of four theories: (1) the product's construction or composition is defective, (2) the product's design is defective, (3) the product's warnings are inadequate, or (4) by showing a breach of express warranty." *Id.*

Plaintiffs bring an inadequate warning claim. To prevail on such a claim, a plaintiff must establish that, *inter alia*, at the time the product left the manufacturer's control, "the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its dangers to users and handlers of the product." *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002).

An "adequate warning" for purposes of the LPLA is "a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made." La. Rev. Stat. § 9:2800.53(9). "Whether a particular warning or instruction is adequate is a question for the trier of fact." *Jack v. Alberto-Culver USA, Inc.*, 949 So. 2d 1256, 1259 (La. 2007). To determine the

8

adequacy of the warning, the following factors are relevant: "(1) the severity of the danger, (2) the likelihood of successful communication of the warning to foreseeable consumers, (3) the intensity and form of the warning, and (4) the cost of improving the strength or mode of the warning." *Walker v. Manitowoc Co.*, 259 So. 3d 465, 477 (La. App. 3d Cir. 2018) (internal quotation marks omitted).

Under the LPLA, plaintiffs bear the burden of establishing that a defendant's failure to issue an adequate warning was the proximate cause of their damages. *Marable v. Empire Truck Sales of Louisiana, LLC*, 221 So. 3d 880, 901 (La. App. 4th Cir. 2017). Proximate cause is defined as "any cause which, in natural and continuous sequence, unbroken by an efficient, intervening cause, produces the result complained of without which the result would not have occurred." *Id.*

As discussed in Section I, *supra*, the Court dismissed plaintiffs' second amended complaint for failing to plausibly allege that defendant's alleged failure to warn of the presence of benzene in its antiperspirant products proximately caused Rooney's cancer. In particular, the Court held that plaintiffs failed to allege any facts that support an inference that Rooney actually used any Secret antiperspirant products that contained benzene.

9

The Court also held that plaintiffs also failed to allege facts supporting their conclusory allegation that benzene causes triple negative breast cancer.

In the latest iteration of their complaint, plaintiffs allege that they currently have a "partially used can of the adulterated product" from a particular lot number that contains benzene, which Rooney allegedly used before she was diagnosed with cancer.[26] Defendant asserts that the number plaintiffs provide is not actually a "lot" number, so it does not link Rooney's can to the batches of Secret that Valisure confirmed were contaminated.[27] Rather, plaintiffs cite the "UPC" number, which is the number that refers to the *type* of product Valisure tested.[28] In other words, defendant contends that the most plaintiffs can show by citing the number on their Secret can is that the product they have identified is, in fact, a six-ounce can of Secret Aerosol Powder Fresh.[29]

In their opposition brief, plaintiffs reiterate that they "have matched a partially used can still in their possession with the lot numbers identified by defendant to contain unsafe levels of benzene," but they do not engage with, much less contest, defendant's assertion that the number they cite is not

---

[26] R. Doc. 32 ¶ 8(a).
[27] R. Doc. 33 at 10.
[28] *Id.*
[29] *Id.*

10

actually the lot number identifying an allegedly adulterated batch; rather, it is the product identification number.³⁰ A cursory review of the Valisure citizen's petition confirms that defendant is correct.³¹ The citizen petition identifies the specific lot numbers of the batches that allegedly contained benzene, but plaintiffs do not allege that the cans Rooney used have those lot numbers. Rather, the citizen petition confirms that the number plaintiffs provide is a "UPC" number, which refers to the general type of Secret product that Valisure tested. Thus, taken as true, the most plaintiffs' new allegations do is confirm the type of Secret antiperspirant product Rooney used.

Plaintiffs new allegations thus do not cure the issue the Court identified in its November 21, 2022 Order and Reasons. As the Court observed in that Order, the Valisure citizen petition does not state that every single sample of Secret that it tested contained benzene.³² It indicates that at least some of the batches it tested contained the chemical, but it does not say how many total batches of Secret products it tested. It further states that of the 108

---

30  R. Doc. 34 at 2. Nor do plaintiffs contend they have or identify other lot numbers that match their partially-used Secret cans with the lot numbers from the citizen petition.
31  R. Doc. 33-12 at 13. Because the Valisure citizen petition is "referred to in the pleadings" and "central to" plaintiffs' claims, the Court may consider the document, which was attached to defendant's motion, at the motion to dismiss stage. *Brand Coupon Network, LLC*, 748 F.3d at 635.
32  R. Doc. 31 at 9.

unique batches of products that Valisure tested, only 59 had detectable levels of benzene, and that "many of the body spray products Valisure tested did not contain detectable levels of benzene."[33] Finally, the citizen petition says that "[t]here was significant variability from batch to batch, even within a single brand."[34] Taking plaintiffs' allegations as true, they show in their third amended complaint that Rooney used a certain kind of Secret antiperspirant, that Valisure tested some batches of that general type of antiperspirant, two of which contained benzene. That two batches of the kind of antiperspirant product Rooney used allegedly contained benzene does not render plausible plaintiffs' assertion that Rooney herself was exposed to benzene. As with their second amended complaint, plaintiffs' third amended complaint fails to plausibly allege that Rooney used a "product [that] possessed a characteristic that may cause damage." *Stahl*, 283 F.3d at 261.

Plaintiffs' new allegations also fail to cure the issue the Court identified in its November 21, 2022 Order and Reasons regarding plaintiffs' failure to plausibly allege that benzene can cause triple negative breast cancer. In its Order, the Court noted that plaintiffs' failure to allege any specific facts regarding the connection between benzene and triple negative breast cancer

---

[33] R. Doc. 31 at 10 (citing R. Doc. 26-2 at 2).
[34] R. Doc. 33-2 at 9.

was "striking when compared to plaintiffs' more detailed allegations about the studies linking benzene to cancer generally."[35] Rather than add more detail about the connection between benzene and triple negative breast cancer, plaintiffs give less detail. They no longer allege that Rooney has triple negative breast cancer. Instead, they allege, in general terms, that she has "breast cancer, and other forms of cancer spreading throughout various parts of her body."[36] Plaintiffs' retreat to more generalized allegations does not address the Court's concerns regarding plaintiffs' causation allegations. Further, plaintiffs list a number of health issues in humans that are linked to benzene exposure, including leukemia, anemia, and excessive bleeding.[37] Breast cancer is not among the list plaintiffs provide. *Compare Watson v. Bayer Healthcare Pharms., Inc.*, No. 13-212, 2013 WL 1558328, at *55 (E.D. La. Apr. 11, 2013) (dismissing LPLA inadequate warning claim where plaintiff failed to plausibly allege that her injury was among the risks posed by defendant's medical device), *with Baudin v. AstraZeneca Pharms. LP*, 413 F. Supp. 3d 498, 507 (denying defendant's motion to dismiss when plaintiff alleged that he developed gastric cancer after using Nexium and included "allegations regarding the scientific support for the link between

---

[35] *Id.* at 11.
[36] R. Doc. 32 ¶ 11.
[37] *Id.* ¶¶ 38-39.

13

Nexium and gastric cancer"). Plaintiffs' "failure to allege facts showing a causal connection between [Rooney's] injury" and defendant's allegedly inadequate warning renders plaintiffs' claim implausible. *Watson*, 2013 WL 1558328, at *5.

In their opposition brief to defendant's motion to dismiss, plaintiffs contend that Rooney now has "lymphoma."[38] In their third amended complaint, plaintiffs do not allege that plaintiff was diagnosed with lymphoma. Rather, they allege that in October of 2022, plaintiff "was notified of cancer in her lymph nodes,"[39] and they refer to a study that found that female mice exposed to benzene experienced increased incidents of lymphoma.[40] Even if these allegations were sufficient to plausibly allege that benzene can cause lymphoma in humans, and the complaint's allegations of cancer in Rooney's lymph nodes necessarily equates with an allegation that Rooney has lymphoma, because plaintiffs have failed to allege any facts in support of their contention that Rooney was exposed to benzene in the first place, plaintiffs' LPLA claim must be dismissed. *Iqbal*, 556 U.S. at 678 ("Nor

---

38   R. Doc. 34 at 1.
39   R. Doc. 32 ¶ 7(b).
40   *Id.* ¶ 16.

14

does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (internal quotation marks omitted)).

As with their second amended complaint, plaintiffs' third amended complaint states that defendant "is guilty of negligence, gross-negligence, strict liability, . . . and fault," and that defendant violated the FDCA. As defendants note in their motion to dismiss, the Court dismissed plaintiffs' non-LPLA claims in its November 21, 2022 Order and Reasons.[41] Plaintiffs do not contest this in their opposition brief, nor do they add any new legal argument related to those claims. To the extent plaintiffs seek to reassert these claims in their third amended complaint, the Court dismisses them for the reasons described in its November 21, 2022 Order and Reasons.[42]

Plaintiffs request that, in the event the Court grants defendant's motion to dismiss, they be given leave to amend their complaint.[43] Defendant opposes this request on the grounds that any amendment would be futile.[44] The Court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013). When deciding whether leave to amend should be given, the

---

41  R. Doc. 33 at 2.
42  R. Doc. 31 at 11-12.
43  R. Doc. 34 at 3.
44  R. Doc. 37 at 6.

Court considers several factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962). The Court finds that, in light of plaintiffs' repeated failure to cure the deficiencies in their complaint, granting leave for plaintiffs to amend a fourth time would be futile. The Court thus dismisses plaintiffs' claims with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss, and dismisses plaintiffs' complaint WITH PREJUDICE.

New Orleans, Louisiana, this __31st__ day of January, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE